**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ERNEST BILLIZONE. SR.**                                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 14-1263-SS**

**JEFFERSON PARISH CORRECTIONAL**
**CENTER, ET AL.**

**ORDER AND REASONS**

Plaintiff, Ernest Billizone, Sr., a frequent litigant in this Court, filed the instant civil action

pursuant to 42 U.S.C. § 1983 against the Jefferson Parish Correctional Center and a number of

individual jail officials asserting a variety of claims.  The parties consented to the jurisdiction of the

undersigned United States Magistrate Judge.[1]

On December 15, 2014, the Court dismissed plaintiff's claims against defendant Jean Llovet

concerning the jail's medical care.[2]  The remaining individual defendants, Sheriff Newell Normand,

Edward Olsen, Howard Lavin, Martha Ennis, John Cotton, Carl Preyer, Gary Cook, and Sue Ellen

Monfra, have now filed a motion seeking dismissal of the claims against them.[3]  Plaintiff was

ordered to respond to that motion on or before April 22, 2015;[4] however, no response has been filed.

---

[1]    Rec. Doc. 53.

[2]    Rec. Doc. 56.

[3]    Rec. Doc. 60; see also Rec. Docs. 63 and 64.

[4]    Rec. Doc. 62.

I.  Jefferson Parish Correctional Center

Before turning to the pending motion, the Court first notes that plaintiff has also named the

Jefferson Parish Correctional Center as a defendant.  However, it is clear that a correctional center

may not be sued because it is merely a building, not a "person" subject to suit under 42 U.S.C. §

1983.  See, e.g., Mitchell v. Jefferson Parish Correctional Center, Civ. Action No. 13-4963, 2013

WL 6002770, at *3 (E.D. La. Nov. 12, 2013); Stamps v. Jefferson Parish Correctional Center, Civ.

Action No. 12-1767, 2012 WL 3026808, at *2 (E.D. La. July 12, 2012), adopted, 2012 WL 3027945

(E.D. La. July 24, 2012).  Accordingly, pursuant to its authority to act *sua sponte* under 28 U.S.C.

§§ 1915(e)(2)(B) and 1915A(b),[5] the Court hereby dismisses the claim against the Jefferson Parish

---

[5]  With respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law
provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the court determines that ... the action or
> appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune
> > from such relief.

28 U.S.C. § 1915(e)(2)(B).
Moreover, federal law further mandates that federal courts "review, before docketing, if
feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which
a prisoner seeks redress from a governmental entity or officer or employee of a governmental
entity."  28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any
> portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief
> > may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Correctional Center as frivolous and/or for failing to state a claim on which relief may be granted. See, e.g., Castellanos v. Jefferson Parish Correctional Center, Civ. Action No. 07-7796, 2008 WL 3975606, at *5 (E.D. La. Aug. 22, 2008).

## II. Individual Defendants

The remaining individual defendants have filed a "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) or, Alternatively, for Summary Judgment Pursuant to Fed. R. Civ. P. 56."[6] The standards to be used in analyzing such motions are clear.

"A motion under Rule 12(c) for failure to state a claim is subject to the same standards as a motion to dismiss under Rule 12(b)(6)." In re Great Lakes Dredge & Dock Co. LLC, 624 F.3d 201, 209-10 (5th Cir. 2010).  The United States Fifth Circuit Court of Appeals has explained:

> To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level.  In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.

Id. at 210 (citations, quotation marks, and brackets omitted).

On the other hand, when reviewing a motion for summary judgment under Rule 56, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[6]    Rec. Doc. 60; see also Rec. Docs. 63 and 64.

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

Applying the foregoing standards, the Court hereby grants the pending motion and dismisses the remaining claims against the individual defendants for the following reasons.

<u>A.  General Conditions of Confinement Claims</u>

In this lawsuit, plaintiff challenges numerous conditions of his confinement at the Jefferson Parish Correctional Center.  In his original complaint, he indicated that he is a pretrial detainee.[7]

---

[7]   Rec. Doc. 1, p. 3.

It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted).   Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of mere inconveniences.   Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees.   Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Ruiz v. El Paso Processing Center, 299 Fed. App'x 369, 371 (5th Cir. 2008).   As explained below, it is apparent that plaintiff's complaints regarding the conditions of his confinement concern inconveniences which do not constitute "punishment" or otherwise rise to the level of constitutional violations.

In his rambling complaint, plaintiff provides a laundry list of grievances; however, the bulk of them center around his contention that the jail is "filthy," full of mold and rust, and infested with pests.

Concerning the generally unsanitary conditions, plaintiff's allegations fall far short of what is required to state a nonfrivolous claim.   Obviously, there is a point beyond which a prison's conditions are so unsanitary as to render them unconstitutional.   See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional).   That said, it must be remembered that, although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free

from potential hazards as one's home might be."  McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions.").  While the conditions described by plaintiff be unpleasant, they are not so egregious as to be unconstitutional.

Plaintiff's claim concerning the presence of mold fares no better.  The jurisprudence has repeatedly held that the mere fact that mold is present does not render an inmate's confinement unconstitutional.  See, e.g., Eaton v. Magee, Civ. Action No. 2:10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); Barnett v. Shaw, No. 3:11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex. June 7, 2011); Reynolds v. Newcomer, Civ. Action No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (plaintiff's complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

Similarly, plaintiff's allegation that rust is present also fails.  The presence of rust in a jail does not rise to the level of a constitutional violation or otherwise warrant relief in a federal civil rights action.  See, e.g., Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015); Simmons v. Gusman, Civ. Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015); Penn v. Jones, Civ. Action No. 13-0830, 2014 WL 31351, at *2 (W.D. La. Jan. 2, 2014).

Likewise, the mere presence of pests, such as gnats, does not amount to a constitutional violation.  See, e.g., Simmons, 2015 WL 151113, at *4; Clark v. Gusman, Civ. Action No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), adopted, 2012 WL 1825302 (E.D. La. May 18, 2012); Murray v. Edwards County Sheriff's Department, 453 F. Supp. 2d 1280, 1292 (D. Kan. 2006), aff'd, 248 Fed. App'x 993 (10th Cir. 2007); Smith v. Barber, 316 F. Supp. 2d 992, 1028-29 (D. Kan. 2004).

In summary, the Court notes that it is not unsympathetic to plaintiff's various complaints concerning the conditions of his confinement.  However, for the reasons explained herein, the issue before the Court is not whether the conditions of plaintiff's confinement are unpleasant or uncomfortable – rather, it is only whether the conditions are *unconstitutional*.  The conditions alleged in this case may be lamentable but they are not unconstitutional.  Accordingly, these claims must be dismissed.

## B.  Fire Hazard Claim

Plaintiff also complains that the Jefferson Parish Correctional Center is "not up to code."[8] Even if that allegation is true, it does not necessarily follow that his constitutional rights have been

---

[8]   Rec. Doc. 7, p. 7.

violated.  While fire and electrical codes "can be helpful in determining whether a lack of fire safety"

rise to the level of a constitutional violation, such codes "are not determinative."  <u>Johnson v. Texas</u>

<u>Board of Criminal Justice</u>, 281 Fed. App'x 319, 322 (5th Cir. 2008).  Moreover, where, as here, an

inmate does not "allege that anyone had been injured by any type of fire or that [the jail] was built

from flammable materials or was particularly susceptible to fires, his allegations do not state a viable

claim."  <u>Id.</u>; <u>accord</u> <u>Hunnewell v. Warden, Main State Prison</u>, No. 93-1917, 1994 WL 52643, at *4

(1st Cir. Feb. 23, 1994) ("[N]ot every deviation from ideally safe conditions constitutes a violation

of the constitution.  Moreover, even liberally construed, plaintiff's complaint that his cell is unsafe

due to fire hazards is conclusory and fails to state a claim under § 1983." (citation omitted));

<u>Sampson v. King</u>, 693 F.2d 566, 569 (5th Cir. 1982) ("In operating a prison, however, the state is

not constitutionally required to observe all the safety and health standards applicable to private

industry.  Nor is it bound by the standards set by the safety codes of private organizations.

Standards suggested by experts are merely advisory.  A federal court required to gauge the conduct

of state officials must use minimum constitutional standards as the measure." (citations omitted));

<u>Patin v. LeBlanc</u>, Civ. Action No. 11-3071, 2012 WL 3109402, at *17 (E.D. La. May 18, 2012),

<u>adopted</u>, 2012 WL 3109398 (E.D. La. July 31, 2012); <u>Davis v. St. Charles Parish Corr. Center</u>, Civ.

Action No. 10-98, 2010 WL 890980, at *7 (E.D. La. Mar. 8, 2010); <u>Jernigan v. Dretke</u>, Civ. Action

No. H-04-4672, 2005 WL 1185627, at *3 (S.D. Tex. Apr. 29, 2005) ("At the most, Jernigan has

alleged a condition that may violate local fire codes.  The prison does not violate the Constitution

if it fails to comply with all health and safety standards. Although the situation Jernigan describes

is far from ideal, it is not so patently egregious or clearly dangerous that the prison officials could

8

be found to be deliberately indifferent if they allowed it to continue.  No actual harm has been alleged, and Jernigan's speculative worries do not establish a claim." (citations omitted)). Accordingly, this claim must also be dismissed.

### C.  Food and Food Service Claims

Plaintiff next complains about the food served at the jail.  However, as was previously explained to plaintiff in another lawsuit in which he challenged the jail's food, the constitutionality of prison food is not judged by its gastronomic appeal.  Billizone v. Jefferson Parish Correctional Center, Civ. Action No. 14-2594, 2015 WL 966149, at *9 (E.D. La. Mar. 4, 2015); accord Cummings v. Gusman, Civ. Action No. 09-144, 2009 WL 1649737, at *3 n. 11 (E.D. La. June 9, 2009).  Rather, the Constitution requires only that jail meals prove "reasonably adequate food" with "sufficient nutritional value to preserve health." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."); Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977) ("A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required.").  Moreover, the United States Fifth Circuit Court of Appeals has noted that "[e]ven on a regular, permanent basis, two meals a day may be adequate." Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999).  Nothing in plaintiffs' complaint suggests that the meals fail to meet these minimal standards.

Plaintiff also complains about the manner in which the food is served.  It is clear that jail food must be "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980).  That said, it is also clear that "[i]nmates cannot expect the amenities, conveniences and

services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988).  Although plaintiff speculates that the manner in which the food is served at the jail could cause serious harm, there is no indication that it has in fact done so.  "[W]ithout an allegation of resulting harm, complaints regarding food service practices simply are not of constitutional dimension." Gabriel v. Gusman, Civ. Action No. 10-1688, 2010 WL 3169840, at *6 (E.D. La.  July 16, 2010), adopted, 2010 WL 3175045 (E.D. La. Aug. 10, 2010); accord Billizone, 2015 WL 966149, at *8; Hawkins v. Gusman, Civ. Action No. 10-1178, 2011 WL 1527218, at *4 (E.D. La. Apr. 1, 2011), adopted, 2011 WL 1527021 (E.D. La. Apr. 20, 2011); Spurlock v. Gusman, Civ. Action No. 10-991, 2010 WL 2102829, *7 (E.D. La. May 5, 2010), adopted, 2010 WL 2102825 (E.D. La. May 25, 2010). Further, plaintiff's complaints about the condition of the food trays and the food temperature are, without more, insufficient to state a cognizable claim. See, e.g., Billizone, 2015 WL 966149, at *8; Wilkerson v. Champagne, No. 03-1754, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003) (no constitutional claim when meals served from "old, cracked, dirty food trays" were not always hot); Sardon v. Peters, No. 94 C 7505, 1995 WL 609147, at *8 (N.D. Ill. Oct. 13, 1995) (allegation that cold food was served fails to state a constitutional claim); Jackson v. Griffith, No. 1:93-CV-424, 1995 WL 21939, at *4-5 (E.D. Tex. Jan. 10, 1995) (claim regarding unsanitary food trays resulting from overcrowded conditions dismissed as frivolous), adopted, 1995 WL 313655 (E.D. Tex. Feb. 8, 1995).

    For these reasons, plaintiff's claims concerning the jail's food and the manner in which it is served must be dismissed.

### D.  Law Library/Legal Services Program Claims

Plaintiff also claims that the jail's law library and legal services program are inadequate. Obviously, inmates have a right of access to the courts which includes a right of access to adequate law libraries or assistance from legally trained personnel needed to file nonfrivolous legal claims challenging their convictions or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 828 (1977); Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999).  However, the Supreme Court in Bounds "did not create an abstract, freestanding right to a law library or legal assistance" in the prison.  See Lewis v. Casey, 518 U.S. 343, 351 (1996).

Further, in any event, the Court notes that an inmate's claim that he has been denied access to the courts is not cognizable unless his position as a litigant was actually prejudiced.  See, e.g., Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999); Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); McDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir. 1998); Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993).  In the instant case, plaintiff does not allege that he has suffered any actual prejudice whatsoever from the purportedly inadequate law library and legal services, and it is clear "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis, 518 U.S. at 351. Because plaintiff "has not alleged that he was actually denied access to the court or that any pending litigation was prejudiced, ... [he] therefore has not stated a cognizable § 1983 claim." Clark v. Foti, No. 94-30615, 1995 WL 136127, at *2 (5th Cir. Mar. 8, 1995).  Accordingly, this claim must also be dismissed.

### E.  Grievance Procedure Claim

Plaintiff also complains that the jail's grievance procedure is ineffective.  Even if that it true, this claim must be dismissed because inmates simply have no constitutional right to an adequate and effective grievance procedure or to have their complaints investigated and resolved to their satisfaction.  Bonneville v. Basse, 536 Fed. App'x 502, 503 (5th Cir. 2013);  Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007).  Therefore, this claim must likewise be dismissed.

### F.  Racism Claim

Plaintiff next alleges that defendant Ennis "is a racist" who inappropriately referred to him as a "boy."[9]  However, "[m]ere allegations of verbal abuse do not present actionable claims under § 1983." Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993); accord Orange v. Ellis, 348 Fed. App'x 69, 72 (5th Cir. 2009) ("[C]laims of verbal harassment do not reveal a constitutional violation. Mere words are not sufficient to support a Section 1983 claim." (citation omitted)); Dussett v. Jefferson Parish Correctional Center, Civ. Action No. 09-6462, 2010 WL 2076772, at *4 (E.D. La. Apr. 21, 2010) ("[T]he law is well settled the use of a racial epithet by a custodial officer does not

---

[9]   Rec. Doc. 7, p. 9.

give rise to a cause of action for violation of constitutional rights."), adopted, 2010 WL 2008982

(E.D. La. May 18, 2010).  Moreover, "an officer's use of a racial epithet, without harassment or some

other conduct that deprives the victim of established rights, does not amount to an equal protection

violation."  Williams v. Bramer, 180 F.3d 699, 706 (5th Cir.), reh'g denied & opin. clarified on other

grounds, 186 F.3d 633 (5th Cir. 1999).  Accordingly, this claim must also be dismissed.

## G. State Law Claims

Lastly, to the extent that plaintiff is asserting any claims under state law, the Court declines

to consider any state law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to

exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over

which it has original jurisdiction ...."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir.

2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined

jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246

(5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss

any pendent claims.").  If plaintiff wishes to pursue claims under state law, he must do so in the state

courts.

Accordingly,

**IT IS ORDERED** that, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the claims

against the Jefferson Parish Correctional Center are **DISMISSED WITH PREJUDICE** as frivolous

and/or for failing to state a claim on which relief may be granted.

13

**IT IS FURTHER ORDERED** that the unopposed "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c) or, Alternatively, for Summary Judgment Pursuant to Fed. R. Civ. P. 56" is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's federal civil rights claims against Sheriff Newell Normand, Edward Olsen, Howard Lavin, Martha Ennis, John Cotton, Carl Preyer, Gary Cook, and Sue Ellen Monfra are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that plaintiff's state law claims, if any, are **DISMISSED WITHOUT PREJUDICE** to their being asserted in the state courts.

New Orleans, Louisiana, this twenty-seventh day of April, 2015.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**